**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **FAIR HOUSING OPPORTUNITIES OF** | : | |
| **NORTHWEST OHIO, INC.** | | |
| **326 N. Erie Street** | : | |
| **Toledo, OH 43604** | | **Case No.** |
| | : | **Judge:** |
| **and** | | |
| | : | |
| **HAILEY MERONK** | | |
| **1236 Elmore Road** | : | |
| **Pemberville, OH 43450** | | |
| | : | |
| **Plaintiffs,** | | |
| | : | |
| **v.** | | |
| | : | |
| **UPPER SANDUSKY, LLC** | | |
| **D/B/A GYPSY LANE** | : | |
| **ESTATES** | | |
| **445 E. Wooster Street** | : | |
| **Bowling Green, OH 43402** | | |
| | : | |
| **and** | | |
| | : | |
| **GREENBRIAR, INC.** | : | **COMPLAINT** |
| **224 E. Wooster Street** | | **JURY TRIAL DEMANDED** |
| **Bowling Green, OH 43402** | : | |
| | | |
| **Defendants.** | : | |

---

**COMPLAINT**

Now come Plaintiffs, Fair Housing Opportunities of Northwest Ohio, Inc. DBA The Fair

Housing Center or Toledo Fair Housing Center ("Plaintiff" or "The Fair Housing Center" or

"TFHC"), and Hailey Meronk ("Plaintiff" or "Plaintiff Meronk" or "Ms. Meronk"), (collectively

referred to as "Plaintiffs"), by and through counsel, and hereby state for their Complaint the following:

## INTRODUCTION

1. Plaintiffs bring this action for declaratory, injunctive, and monetary relief against Upper Sandusky LLC DBA Gypsy Lane Estates and Greenbriar, Inc., (collectively "Defendants"), for discrimination on the basis of disability in violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq*., the federal Fair Housing Amendments Act of 1988 ("FHAA"), and the fair housing laws of the state of Ohio, Ohio Rev. Code § 4112, *et seq.*, (collectively the "Fair Housing Laws").

2. This action arises from Defendants' noncompliance with the Fair Housing Laws pursuant to two separate requests for reasonable accommodation for Ms. Meronk to be permitted to apply for a mobile home lot with the assistance of a guarantor or co-signer.

3. Defendants have a policy or practice of not accepting co-signers or guarantors in their application process.

4. Policy adjustments are necessary to afford applicants with disabilities like Plaintiff Meronk an equal opportunity to use and enjoy a dwelling and the requested accommodation in this matter was reasonable since allowing a financially eligible co-signer or guarantor to rent a mobile home lot does not threaten any legitimate interest of the Defendants.

5. The Fair Housing Laws require a housing provider to grant a reasonable accommodation involving a co-signer or guarantor when an applicant with a disability like Plaintiff Meronk has limited job and credit history because of such disability.

6. An independent investigation was conducted into this matter by the Ohio Civil Rights Commission.

2

7. The Ohio Civil Rights Commission determined that it was probable that Defendants engaged in an unlawful discriminatory practice on the basis of disability in violation of Chapter 4112 of the Ohio Revised Code.

8. Defendants denied Plaintiffs' reasonable accommodation requests and in doing so made housing unavailable for Ms. Meronk.

9. Such violations of the Fair Housing Laws include failure to grant a reasonable accommodation for the use of a co-signer or guarantor on the application; failure to engage in an interactive process to best accommodate Plaintiff Meronk; and making statements which discourage applicants with disabilities from applying for a mobile home lot.

10. Defendants' policies and procedures for addressing reasonable accommodation requests as described herein constitute violations of the Fair Housing Laws, discourage applications and requests for reasonable accommodations, and make housing unavailable for persons with disabilities.

11. Defendants' actions and policies violate the Fair Housing Laws and their rental practices have harsh consequences for persons with disabilities who are routinely denied the opportunity to reside within Defendants' property while being subjected to differential treatment in the terms and conditions of applying for and renting mobile home lots.

12. Defendants' actions, policies, and practices, as described herein, violate the federal fair housing laws, 42 U.S.C. 3601, *et seq*.; and the Ohio Fair Housing Law found at Ohio Rev. Code §4112.02(H), *et seq.*

## PARTIES

13. Plaintiff, Fair Housing Opportunities of Northwest Ohio, Inc. DBA The Fair Housing Center, is a private, non-profit corporation, organized under the laws of the State of Ohio.

The Fair Housing Center's mission is to be a nonprofit civil rights agency that promotes housing choice, the creation of inclusive communities of opportunity, and the protection and expansion of fair housing rights to support strong communities free from housing discrimination.

14. Plaintiff, The Fair Housing Center, advocates on behalf of clients when housing providers violate the Fair Housing Laws; provides training and education to housing providers to avoid discrimination; and conducts investigations, including testing, to ensure civil rights law are being followed in housing accommodations, services, and transactions.

15. Plaintiff, Hailey Meronk, is a resident of Wood County, Ohio and applicant at Defendants' mobile home park. Ms. Meronk is protected from discrimination on the basis of disability as she suffers from developmental disabilities.

16. As referenced in this Complaint, Patty Beam is the mother of Hailey Meronk and serves as Hailey Meronk's agent and power of attorney.

17. Defendant, Upper Sandusky LLC, is a real estate development and property management company doing business in the State of Ohio.  Defendant is incorporated in the State of Ohio and has a physical presence in Wood County, Ohio. Defendant, Upper Sandusky, LLC, owns and operates the mobile home park known as Gypsy Lane Estates located at 535 W Gypsy Lane Rd, Bowling Green, OH 43402 (the "Subject Property").

18. Defendant, Greenbriar, Inc. is a real estate management company managing rental properties throughout Northwest Ohio, including Bowling Green, Findlay, Fremont, Perrysburg, and Toledo. Defendant, Greenbriar, Inc., manages the Subject Property for Defendant Upper Sandusky, LLC.

19. In acting or omitting to act as alleged herein, each Defendant was acting through its employees, officers, and/or agents and is liable on the basis of the acts and omissions of its employees, officers, and/or agents.

20. In acting or omitting to act as alleged herein, each employee, officer, or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent were subsequently ratified and adopted by Defendants as principal.

## JURISDICTION AND VENUE

21. Jurisdiction is appropriate in that this civil action is brought under the federal Fair Housing Act ("FHA"), federal Fair Housing Amendments Act ("FHAA"), 42 U.S.C. §§ 3601, *et seq.*, and Ohio Rev. Code § 4112.01 *et seq.*, and the amount in controversy is greater than $25,000.00.

22. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the complaint raises federal questions under the FHA and FHAA.

23. This Court has supplemental jurisdiction over related state law claims, Ohio Rev. Code § 4112, *et seq.* (the "Ohio Fair Housing Act"), under 28 U.S.C. § 1367.

24. Defendants are subject to the jurisdiction of this Court as they are "Persons" under the FHA and Ohio Fair Housing Act, and the acts described herein occurred in Bowling Green, Wood County, Ohio.

25. Additionally, Defendants are subject to the jurisdiction of the Court as they conduct business across Ohio, including but not limited to: owning property, managing property, leasing property, and performing contractual obligations in Ohio.

26. Venue is proper in that the Defendants' discriminatory acts occurred primarily in Bowling Green, Wood County, Ohio.

27. Wherefore, Plaintiffs respectfully request that this honorable Court take jurisdiction of this Complaint and award such relief as is appropriate under the federal and state Fair Housing Laws.

**FACTS**

28. Plaintiffs reincorporate and reallege each and every allegation contained in Paragraphs 1 through 27 as if fully restated herein.

29. Plaintiff Meronk is a person with a disability as defined under the Fair Housing Laws.

30. Plaintiff Meronk's mother, Patty Beam (hereinafter "Ms. Beam"), is her agent and Power of Attorney ("POA").

31. Plaintiff Meronk sought housing from Defendants at Gypsy Lane Estates in March and April of 2022.

32. Ms. Beam, on behalf of Plaintiff Meronk, asked Defendants about applying with a co-signer first and was instructed by Defendant to have Plaintiff Meronk apply without a co-signer to determine if a co-signer was warranted.

33. Plaintiff Meronk then applied to rent a lot at Defendants' property, owned by Defendant Upper Sandusky, LLC and managed by Defendant Greenbriar, Inc.

34. Plaintiff Meronk's application was denied as a result of not having a credit score. Upon information and belief, Plaintiff Meronk did not have bad credit but rather had a limited credit history which did not populate a credit score.

35. Plaintiff Meronk's credit history is untraditional because of her disability and limited ability to work.

36. Ms. Beam subsequently made a reasonable accommodation request on behalf of Ms. Meronk.

37. The reasonable accommodation request was for Defendants to allow Plaintiff Meronk to apply with a co-signer since she had a limited credit and work history because of her disability.

38. Plaintiff Meronk and Ms. Beam subsequently contacted Plaintiff, The Fair Housing Center, to receive guidance and advice regarding Ms. Meronk's fair housing rights.

39. Plaintiff, The Fair Housing Center, researched the issue, investigated the Defendants and their policies and practices, advised Plaintiff Meronk and Ms. Beam, and communicated with Defendants on behalf of Ms. Meronk.

40. Plaintiff, The Fair Housing Center, also submitted a reasonable accommodation request on behalf of Ms. Meronk, accompanied by verification of Ms. Meronk's disability.

41. Both reasonable accommodation requests were denied by Defendants.

42. Defendants demanded that Plaintiff Meronk move her mobile home off the lot therefore making housing unavailable.

43. On April 13, 2022 Plaintiff Meronk filed an administrative complaint with the Ohio Civil Rights Commission (the "Commission").

44. Plaintiff, The Fair Housing Center, also filed an administrative complaint with the Commission on that same date.

45. The Commission completed an extensive investigation of Defendants' actions and housing policies, practices, and services related to this Complaint.

46. The Commission found that Plaintiffs requested a reasonable accommodation and Defendants did not engage in the interactive process to reasonably accommodate Plaintiffs as required by the Fair Housing Laws.

47. The Commission further found that Defendants failed to grant a reasonable accommodation for Plaintiffs to be permitted to apply to rent a lot with Respondent with the use of a co-signer or guarantor.

48. The Commission further found that Defendants policies regarding emotional support animals ("ESA") were discriminatory.

49. On or around January 12, 2023, the Commission issued a Letter of Determination, attached as Exhibit 1, finding that it was probable that Defendant engaged in an unlawful discriminatory practice against Plaintiffs in violation of Ohio Rev. Code § 4112.

50. Defendants' conduct and policies violate the Fair Housing Laws and discourage prospective applicants with disabilities from applying for or leasing lots with Defendants which reduces housing choice for tenants with disabilities like Plaintiff Meronk.

**INJURY TO PLAINTIFFS**

51. Plaintiffs requested reasonable accommodations to Defendants' policies and procedures regarding the use of co-signers and guarantors.

52. Plaintiff Meronk has nontraditional credit and work history because of her disability therefore making an accommodation for her to apply with the use of a guarantor or co-signer both reasonable and necessary.

53. Defendants denied the requested accommodations, and as a result, Plaintiff Meronk was denied equal housing opportunity.

54. Plaintiff Meronk was subjected to differential treatment in the terms, conditions, privileges, and services in applying for and renting a lot compared to non-disabled residents.

55. As a direct, proximate, and foreseeable result of Defendants' discriminatory conduct as described herein, Plaintiff Meronk suffered and continues to suffer substantial harm and injury, economic and non-economic.

56. As a direct, proximate, and foreseeable result of Defendants' actions as described herein, Plaintiff, The Fair Housing Center, has suffered, continues to suffer, and will in the future suffer substantial, particularized, and concrete injuries.

57. Defendants' unlawful conduct, policies, and practices have frustrated and impaired The Fair Housing Center's mission and purpose, forced them to drain their limited and scarce resources, and interfered with their ability to operate.

58. Defendants' conduct frustrated The Fair Housing Center's mission by interfering with their mission-related activities, impairing their ability to achieve their goals of ensuring equal and fair access to housing opportunities, and harming their community.

59. Defendants' discriminatory conduct has forced and required The Fair Housing Center to engage in numerous activities to identify and counteract the Defendants' unlawful conduct, policies, and practices, in order to protect residents from unlawful housing discrimination.

60. Plaintiff, The Fair Housing Center, conducted extensive investigations of disability-related issues at Defendants' properties, including monitoring of the Subject Property to identify and counteract the discriminatory conduct and requesting an accommodation on behalf of Plaintiff Meronk.

61. The Fair Housing Center investigations included research, site visits, education and outreach, extensive staff discussions, advocacy and negotiation at the Commission, and

research on Defendants' ESA and reasonable accommodation policies, in an effort to resolve and ameliorate the discriminatory housing actions, policies, practices, and services of Defendants.

62. The Fair Housing Center's diversion of time and resources to address Defendants' discriminatory conduct and policies as defined herein forced TFHC to suspend other projects that would have helped to further its mission, including multiple training sessions, investigation of other housing providers, missed speaking engagements, delaying its Analysis of Impediments to Fair Housing Study in the Greater Toledo Area, and other testing-related activity.

63. The Fair Housing Center will continue to divert its scarce resources and have its mission frustrated until Defendants' discriminatory conduct ceases and the harm caused by Defendant on residents and prospective residents are remedied and resolved.

64. Plaintiff Meronk incurred actual economic and non-economic damages because of Defendants' discriminatory conduct of denying her reasonable accommodation requests and subjecting her to different terms, conditions, privileges, and services in renting her unit compared to non-disabled residents.

65. Wherefore, Plaintiffs ask this Court to award compensatory and punitive damages in excess of $25,000, along with attorney fees and costs, in an amount to be determined at trial.

## CAUSES OF ACTION

## COUNT I: VIOLATION OF THE FAIR HOUSING ACT OF 1968, as amended
## 42 U.S.C. § 3601, *et seq.*

66. Plaintiffs reincorporate and reallege each and every allegation contained in Paragraphs 1 through 65 as if fully restated herein.

67. Defendants' conduct and policies as described in this Complaint constitute a refusal to make reasonable accommodations in rules, policies, practices, or services when such an accommodation may be necessary to afford a person with a disability an opportunity to use and enjoy a dwelling in violation of 42 U.S.C §§ 3604(f)(1); 3604(f)(2); and 3604(f)(3)(B).

68. Defendants' conduct and policies as described in this Complaint constitute discrimination against the Plaintiff in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the disability of a person residing in or intending to reside in a dwelling, including through the refusal to make reasonable accommodations, in violation of 42 U.S.C. §§ 3604(f)(1); 3604(f)(2); and 3604(f)(3)(B).

69. As a direct and proximate result of Defendants' discriminatory conduct and policies, Plaintiffs have suffered damages and are aggrieved persons, as defined in 42 U.S.C. § 3602(i).

70. There are no valid or legitimate reasons for denying Plaintiffs' reasonable accommodation requests, selectively enforcing their policies, or having overly restrictive policies and procedures for requesting a reasonable accommodation.

71. Defendants made housing unavailable for Plaintiff Meronk by failing to consider, or grant reasonable accommodations in the form of permitting the use of a guarantor or co-signer on an application for tenancy.

72. Defendants frustrated the mission of The Fair Housing Center and forced them to divert their scarce and limited resources to remedy the discriminatory conduct of Defendants as referenced in this Complaint.

73. Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, along with attorney fees and costs, in an amount to be determined at trial.

## COUNT II: VIOLATION OF THE OHIO CIVIL RIGHTS ACT

## OHIO REV. CODE § 4112.02(H), *et seq.*

74. Plaintiffs reincorporate and reallege each and every allegation contained in Paragraphs 1 through 73 as if fully restated herein.

75. Defendants' conduct and policies as described in this Complaint constitute a refusal to make reasonable accommodations in rules, policies, practices or services when necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling, in violation of Ohio Rev. Code §§ 4112.02(H)(15) and 4112.02(H)(19).

76. Defendants' conduct and policies as described in this Complaint constitute an unlawful refusal to rent, denial or withholding of a housing accommodation because of disability in violation of Ohio Rev. Code § 4112.02(H)(1) and (H)(4).

77. Defendants' conduct and policies as described in this Complaint constitute unlawful discrimination in the terms or conditions of transferring, assigning, renting, leasing, or subleasing a lot; or in the furnishing of facilities, services, or privileges, in connection with the occupancy or use of the premises on the basis of disability in violation of Ohio Rev. Code §§ 4112.02(H)(4) and 4112.02(H)(16).

78. As a direct, proximate, and foreseeable result of Defendants' discriminatory conduct and policies, Plaintiffs have suffered damages and are aggrieved persons, as defined in Ohio Rev. Code § 4112.051.

79. There are no valid or legitimate reasons for denying Plaintiffs' reasonable accommodation requests, selectively enforcing their policies, or having overly restrictive policies and procedures for requesting a reasonable accommodation.

80. Defendants made housing unavailable for Plaintiff by failing to consider, or grant reasonable accommodations in the form of permitting an application with the use of a guarantor or co-signer.

81. Defendants frustrated the mission of The Fair Housing Center and forced them to divert their scarce and limited resources to remedy the discriminatory conduct of Defendant as referenced in this Complaint.

82. Wherefore, Plaintiffs request compensatory and punitive damages in excess of $25,000, along with attorney fees and costs, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, due to Defendants' discriminatory conduct and policies as described herein, Plaintiffs respectfully request that this Court grant judgment in their favor, and against Defendants, as follows:

A. Declaring that Defendants' actions violate the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.,* and Ohio Rev. Code § 4112.01, *et seq.;*

B. Permanently enjoining Defendants from engaging in the conduct described herein and directing Defendants to take all affirmative steps necessary to remedy the effects of the conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

**C.** Awarding all compensatory damages, economic and non-economic, to Plaintiffs in an amount to be determined by a jury that would fully compensate Plaintiffs for the injuries caused by the conduct of Defendants as alleged herein;

**D.** Awarding punitive damages to Plaintiffs in an amount to be determined by a jury that would punish Defendants for the willful, wanton, and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

**E.** Awarding reasonable attorneys' fees and costs as permitted by the Fair Housing Laws; and

**F.** Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues triable as of right.

Respectfully submitted,

*/s/ C. Jacob Davis*

_____
C. Jacob Davis (#0101745)
Nalls Davis | Attorneys at Law
33 White Allen Avenue
Dayton, Ohio 45405
Phone: (937) 813-3003
Fax: (937) 200-7285
Jacob.Davis@nallslaw.com
Attorney for Plaintiffs, Fair Housing Opportunities of
Northwest Ohio, Inc., and Hailey Meronk

*/s/ George Thomas*

_____
George Thomas (#0083354)
The Fair Housing Center
326 N. Erie Street
Toledo, Ohio 43604
Phone: (419) 243-6163
Email: gthomas@toledofhc.org
Attorney for Plaintiffs, Fair Housing Opportunities
of Northwest Ohio, Inc., and Hailey Meronk

**CERTIFICATE OF SERVICE**

I hereby certify that this Complaint is being filed utilizing the Court's electronic filing system. I request that service of the Summons and Complaint be made by the Clerk of Courts, via certified mail return receipt requested, or another form of proper service under the Ohio Rules of Civil Procedure, at the addresses listed in the caption of this Complaint.

*/s/ C. Jacob Davis*

_____

C. Jacob Davis (#0101745)

Dated: June 30, 2023

**Exhibit 1 – Commission Determination**



# OHIO CIVIL RIGHTS COMMISSION

Governor Mike DeWine
Commissioners:  Lori Barreras, Chair | J. Rita McNeil Danish | William Patmon, III | Madhu Singh | Charlie Winburn
Executive Director Angela Phelps-White

**January 12, 2023**

Hailey Meronk
Patricia Beam, Power of Attorney
535 West Gypsy Lane Lot #338
Bowling Green, OH  43402
pakolozy@aol.com



**Mailed Date: January 12, 2023**

Robert W. Maurer, Owner
Maurer Rentals, LLC
445 East Wooster St.
Bowling Green, OH  43402

## LETTER OF DETERMINATION

Hailey Meronk v. Upper Sandusky, LLC dba Gypsy Lane Estates fka Gypsy Lane Estates, Inc.;
Greenbriar, Inc.; Robert Maurer, Owner
TOLH2(41426)04142022 AMENDED/05-22-5761-8

**FINDINGS OF FACT:**

On April 14, 2022, Charging Party, Hailey Meronk filed an affidavit with the Ohio Civil Rights Commission ("Commission") alleging Respondent(s), Upper Sandusky, LLC dba Gypsy Lane Estates fka Gypsy Lane Estates, Inc; Greenbriar, Inc.; Robert Maurer, Owner (herein after referred to as the "Respondent") refused to rent, sell or deal and applied different terms and conditions, based on disability. All jurisdictional requirements for filing a charge have been met.

The subject property is a mobile home park with 310 lots. The subject property was built in 1958.

Upper Sandusky, LLC dba Gypsy Lane Estates fka Gypsy Lane Estates, Inc. are the owners of the subject properties. Greenbriar, Inc. are Property Managers for the subject property.

Charging Party is disabled. Charging Party's mother purchased a trailer home for her from a private seller and that trailer home is located within the Gypsy Lane Estates Mobile Home Park. Charging Party's parent inquired as to whether Respondents would allow an applicant to have a co-signer and was instructed that Charging Party should complete an application first, then details such as a co-signer could be discussed. After Charging Party applied to rent the lot, Charging Party's application was denied by Respondents. Charging Party requested a reasonable accommodation to have a guarantor, who was her parent. Respondents denied Charging Party's accommodation request to have the opportunity to have a guarantor.

Respondents deny any discriminatory conduct in this matter. Respondents state Charging Party alleges that she was denied housing because of an unspecified disability. Charging Party claims that she was denied a reasonable accommodation. She alleges that her reasonable accommodation was the failure to permit her to have a guarantor.

Respondents state that there was no alleged disability identified when the application was submitted. The alleged reasonable accommodation that was denied was the failure to allow Charging Party to have a guarantor.

---

Hailey Meronk v. Upper Sandusky, LLC dba Gypsy Lane Estates fka Gypsy Lane Estates, Inc.;
Greenbriar, Inc.; Robert Maurer, Owner
TOLH2(41426)04142022 AMENDED/05-22-5761-8
Page 2

Respondents state it is not clear if Charging Party or her mother, Patricia Beam, completed an application
for a lot at Gypsy Lane Estates. There is an application dated March 24, 2022. The application was picked
up by Ms. Beam and later delivered by Ms. Beam. Respondents never met Charging Party. Further,
Respondents never talked with Charging Party. Respondents do not know if the application was completed
by Ms. Beam or Charging Party. Respondents do not know if the signature on the application is in
Charging Party's hand or if Ms. Beam signed her daughter's name.

Respondents state Ms. Beam told Respondents that they were to communicate only with Ms. Beam about
the application. There was no reason given for this directive.

Respondents state normally, when a party is interested in renting space at Gypsy Lane Estates, the
interested party files an application to secure lot rent approval. Once approved, the interested party then
purchases or otherwise locates a mobile home to place at the approved lot space.

Respondents state the foregoing process was not followed by Charging Party. Instead, the mobile home
was purchased before lot approval was secured.

Respondents ran a credit report on March 25, 2022. The credit report showed that Charging Party had
insufficient credit. She did not have a reported job. The credit report also identified two criminal
misdemeanor convictions from the Putnam County Municipal Court.

Respondents state Charging Party's application noted that she had a full-time job. However, the date
employed was noted as April 4, 2022. Since the application was dated March 25, 2022, the disclosure
meant that Charging Party was not yet employed. In addition, the application noted that Charging Party
would work a 20-hour work week at $16 per hour. Respondents state the job was clearly not a full-time
job.

Respondents state Charging Party was notified in a March 31, 2022, letter that her application was not
approved. The letter is included in the documents produced as part of this response. Charging Party was
advised that the decision was based on the credit report from AmRent.

Respondents state Ms. Beam continued to call about the denied application. When the calls from Ms.
Beam continued, Respondent, Greenbriar, Inc., through Pat Maurer, Manager, issued a letter dated April
5, 2022, directed to Patricia Beam. The letter is self-explanatory. The credit rules used by Respondent
were included with the April 5, 2022, letter.

Respondents state Ms. Beam sent a response letter dated April 7, 2022 . Ms. Beam advised that she is her
daughter's power of attorney. Ms. Beam stated that Charging Party received financial and other assistance
from her father and from Ms. Beam. Ms. Beam admitted that her daughter does not make enough on her
own to qualify her for most rental properties. Ms. Beam offered Charging Party's father, David Meronk,
as a co-signer and guarantor. Ms. Beam did not offer to act as co-signer or guarantor.

Respondent Greenbriar, Inc. investigated Mr. Meronk's credit using the online service Intellius. Mr.
Meronk had two prior Chapter 7 bankruptcies. He was discharged in November 2005 and again in
November 2016. Based on his credit history, Mr. Meronk was not deemed a suitable co-signer or
guarantor.

Hailey Meronk v. Upper Sandusky, LLC dba Gypsy Lane Estates fka Gypsy Lane Estates, Inc.;
Greenbriar, Inc.; Robert Maurer, Owner
TOLH2(41426)04142022 AMENDED/05-22-5761-8
Page 3

Poor credit is not a disabling condition. The credit policy used by Respondents requires all applicants to be currently employed and/or able to provide a verifiable source of income for the prior twelve (12) months. Charging Party was unable to satisfy either requirement.

Further, Respondent's position in the matter indicates the poor credit of Mr. Meronk confirmed that he was not an appropriate guarantor. He had been discharged twice in bankruptcies. Consistent with the Respondent's credit policy, the bankruptcies were considered. Mr. Meronk was not approved.

Staff reviewed relevant documentation. Documents show Charging Party applied for tenancy on March 24, 2022. Charging Party also submitted a letter from her employer regarding her future employment with the application. Charging Party received a denial letter on March 31, 2022, based on a credit and background search completed on March 25, 2022. On April 5, 2022, Respondents sent another denial letter to Charging Party's mother along with Respondent's credit policy.

Documents show that Charging Party's application showed part-time employment not full time as stated by Respondents. Charging Party's criminal history was never used as a reason for denial. Respondents state the reason for denial was for financial status.

Information shows a letter dated April 7, 2022, was submitted to Respondents by Charging Party's mother stating Charging Party is disabled, receives financial assistance from her parents and is requesting a co-signer be used for Charging Party's application. On April 7, 2022, The Fair Housing Center also submitted a letter requesting a reasonable accommodation on Charging Party's behalf.

Information shows that a few days after The Fair Housing Center's letter, the Toledo Fair Housing Center received a voicemail message from Respondent, Robert Maurer. Respondent Maurer stated that Respondent's received the letter, and that Charging Party was unable to cross the barrier for credit. Respondent Maurer also stated that they do not accept guarantors, they basically do not do that, hardly anytime. Respondent Maurer went on to say they cannot accept Charging Party as a tenant.

Interview information shows that Charging Party's mother inquired into the denial of Charging Party's application numerous times with no response.

Documents show on May 9, 2022, or May 10, 2022, Respondent Greenbriar ran an online service Intellius search on Mr. Meronk. A full background credit check was not completed on Mr. Meronk. Mr. Meronk did have two bankruptcies from 2005 and 2016. Per Respondent's policy a bankruptcy will be factored into the applicant's credit history and may negatively affect an application or be grounds for denial. Respondent Greenbriar failed to complete a full credit check on Charging Party's co-signer.

Respondent's Credit Policy is as follows:

> Applicants must have a credit score of at least 600 to be considered for approval. Applicants with a credit score of 600 or below will not be considered. An applicant's credit score is not the only factor considered. Any bankruptcy, unsatisfied collections, judgments, liens and past due balances will be factored into your credit history and may negatively affect your application or be grounds for denial.

Hailey Meronk v. Upper Sandusky, LLC dba Gypsy Lane Estates fka Gypsy Lane Estates, Inc.;
Greenbriar, Inc.; Robert Maurer, Owner
TOLH2(41426)04142022 AMENDED/05-22-5761-8
Page 4

Information shows that Respondent Greenbriar completed credit checks and allowed co-signers for other tenants. Respondent Greenbriar also approved tenancy for another tenant with a co-signer for the subject property.

There is no information that Respondent Greenbriar issued another denial letter based on Mr. Meronk's online service Intellius search to all parties.

Information shows Respondents did not engage in the interactive process to allow Charging Party to complete an application for a co-signer and have a complete credit check done. This would have allowed for all credit worthiness to be considered. Respondents were also made aware of Charging Party's disability and need for a co-signer(s).

Information shows that Respondent Greenbriar did complete an online credit search of Charging Party's co-signer, Mr. Meronk on or about May 9, or May 10, of 2022. This occurred a month after Charging Party's request for a co-signer and after service of the notification letters regarding the charge affidavit from the Ohio Civil Rights Commission. The notification letters were sent U.S. mail on April 19, 2022. Respondent Robert Maurer confirmed receipt on May 4, 2022.

Upon Discovery, Respondent's policies regarding Emotional Support Animals (ESA) shows a limit of one ESA (cat or dog) per person. The rules state Assistant Animals are not allowed in any other facility other than the housing to which the resident is assigned. The Commission's technical policy T-31.3 provides that "Animal assistants are not pets. Therefore, "no pets" policies do not apply to animal assistants. They should be treated as an extension of the disabled person; hence, they are not subject to the restrictions that housing providers generally apply to pets." Respondents have violated 4112 and Title VII regarding Assistant Animal based on disability.

**DECISION:**
The Ohio Civil Rights Commission determines it is **PROBABLE, and upon discovery on the issue of Emotional Support Animal Policy based on disability,** that Respondent has engaged in an unlawful discriminatory practice in violation of Ohio Revised Code Chapter 4112. Therefore, the Commission hereby orders that this matter be scheduled for **CONCILIATION.**

In accordance with Ohio Revised Code § 4112.05(A) and Ohio Administrative Code § 4112-3-03(C), the Commission invites you to participate in conciliation by informal methods of conference, conciliation, and persuasion. Enclosed is a draft Conciliation Agreement and Consent Order for your consideration.

Brad Adams has been assigned as Conciliator and can be reached by telephone at 419-245-2911 or by email at Brad.Adams@civ.ohio.gov@civ.ohio.gov. **Please contact the Conciliator to discuss the conciliation process**.

If the Commission's attempts at conciliation are unsuccessful, a formal complaint will be issued, and the case will be scheduled for a public hearing.

Hailey Meronk v. Upper Sandusky, LLC dba Gypsy Lane Estates fka Gypsy Lane Estates, Inc.;
Greenbriar, Inc.; Robert Maurer, Owner
TOLH2(41426)04142022 AMENDED/05-22-5761-8
Page 5

**NOTICE OF RIGHT TO REQUEST RECONSIDERATION:**

Pursuant to Ohio Administrative Code § 4112-3-04, you have the right to request reconsideration of this determination of the Commission. The application must be in writing and state specifically the grounds upon which it is based. If you wish to appear before the Commissioners to present oral arguments supporting your request, you must specifically make a request to appear in writing.

This request must be sent to the Compliance Department, Ohio Civil Rights Commission, 30 East Broad Street, 5th Floor, Columbus, Ohio 43215.

You must submit the request for reconsideration, along with all additional evidence or supporting documentation, within **TEN (10) days** of the date of mailing of this notice.

Any application for reconsideration or additional materials received by the Compliance Department in the Commission's Columbus Central Office after the ten-day period has expired will be deemed untimely filed. Extensions of this ten-day filing period are not permitted.

*\*\*Please note, conciliation efforts do not toll the applicable time period for submitting a Request for Reconsideration. See, Ohio Administrative Code § 4112-3-04.*


FOR THE COMMISSION,

*Inder F. Levesque*

Inder F. LeVesque.
Toledo Regional Director
IFL/sms
Enclosure: Draft Conciliation Agreement and Consent Order


cc: **Additional Respondents**
Upper Sandusky, LLC dba Gypsy
Lane Estates fka Gypsy Lane Estates, Inc.
445 East Wooster St.
Bowling Green, OH 43402

**Additional Respondents**
Robert W. Maurer, Owner
Greenbriar, Inc.
445 East Wooster St.
Bowling Green, OH 43402

**Charging Party's Representative**
Rachael Fortlage, Staff Attorney
The Fair Housing Center
326 North Erie Street
Toledo, OH 43604
rfortlage@toledofhc.org

**Respondent's Representative**
Christopher F. Parker, Esq.
GORANSON, PARKER & BELLA
CO., L.P.A.
405 Madison Ave., Suite 2200
Toledo, OH 43604
cparker@gpblaw.com



# THE OHIO CIVIL RIGHTS COMMISSION

**CENTRAL OFFICE**
Rhodes State Office Building
30 East Broad Street, 5th floor
Columbus, Ohio 43215
Telephone: (614) 466-2785
Toll Free: (888) 278-7101
TTY: (614) 752-2391
Fax: (614) 644-8776

**TOLEDO REGIONAL OFFICE**
One Government Center
640 Jackson St., Suite 936
Toledo, Ohio 43604
Telephone: (419) 245-2900
Toll Free: (888) 278-7101
TTY: (614) 752-2391
Fax: (419) 245-2668

## CONCILIATION AGREEMENT AND CONSENT ORDER

Charge Number:     TOLH2(41426)04142022 AMENDED/05-22-5761-8
Charging Party:    Hailey Meronk
Respondent:        Upper Sandusky, LLC dba Gypsy Lane Estates fka Gypsy Lane Estates, Inc;
                   Greenbriar, Inc.; Robert Maurer, Owner

### General Provisions

1.    This Conciliation Agreement and Consent Order is made between the Ohio Civil Rights Commission (hereinafter "Commission"); Hailey Meronk (hereinafter "Charging Party"); Upper Sandusky, LLC dba Gypsy Lane Estates fka Gypsy Lane Estates, Inc; Greenbriar, Inc.; Robert Maurer, Owner (hereinafter "Respondent") and Respondent's heirs, representatives, officers, agents, employees, successors, or assignees.

2.    This Conciliation Agreement and Consent Order is designed to ensure voluntary compliance with the provisions of the Ohio Laws Against Discrimination, as set forth in Ohio Revised Code Chapter 4112.

3.    Respondent agrees that there shall be no discrimination of any kind as prohibited by Ohio Revised Code Chapter 4112 and that there shall be no retaliation against any person because he/she has opposed a practice deemed illegal under that chapter or because he/she has filed a charge, testified, assisted, or participated in an investigation, proceeding, or hearing.

4.    Charging Party hereby waives, releases, and agrees not to sue Respondent for any claims arising before the Ohio Civil Rights Commission that were the subject of the above-referenced charge.

---

### Remedial Action

5.    As evidence of a good faith effort to resolve the above-referenced charge, it is agreed:

a.  Respondent will not discriminate with respect to housing. Prohibited actions include, but are not limited to:

      i.  discriminating against any person in the availability, terms, conditions, or privileges of occupancy because of disability, race, color, sex, religion, national origin, military status, ancestry, or familial status.

b.  Respondent shall formulate an accommodation policy which specifically includes a written process regarding reasonable accommodation and modifications.

c.  Respondent shall review and update their Assistant Animals polices per the guidelines of 4112 and Title VII.

d.  Respondent's owners, managers, directors, and all other employees shall attend no less than two (2) hours of suitable Ohio Civil Rights Commission approved training with regard to disability discrimination, and reasonable accommodation requests within the meaning of Ohio Revised Code Chapter 4112 at Respondent's expense. This shall take place within 60 days of executing this agreement.

e.  Respondent shall establish annual training sessions to sensitize supervisory and non-supervisory employees on disability discrimination and reasonable accommodation requests whenever needed, but no less than once each year. The training shall focus on Ohio Revised Code Chapter 4112.

f.  Respondent shall pay Charging Party actual damages incurred.

g.  Respondent shall display the HUD fair housing logo on all written advertisements.

h.  Respondent shall place a quarter page advertisement in local newspapers. The advertisements will state that Respondent supports The Fair Housing Act. The advertisement will be placed during Fair Housing month in April of 2023 and 2024 respectively.

i.  In the event of a breach of this agreement, Respondent agrees to pay the Commission, as liquidated damages, the base hourly rate for Commission employee(s) involved in handling the breach, times the hours spent on documented enforcement efforts by said employee(s). Such liquidated damages are intended to represent estimated actual damages and are not intended as a penalty.

6.    Supporting documentation and proof of compliance with this Conciliation Agreement and Consent Order shall be submitted to Inder F. LeVesque, Toledo Regional Director, Ohio Civil Rights Commission, One Government Center, 640 Jackson Street, Suite 936, Toledo, OH 43604 within 90 days of the signature date of the agreement.

## **Enforcement**

**7.**   In accordance with the terms of Ohio Revised Code § 4112.06 and Ohio Administrative Code § 4112-3-03(D), this Conciliation Agreement and Consent Order constitutes a final order of the Commission. Respondents agree to be legally bound by this Conciliation Agreement and Consent Order and to waive a public hearing in this matter. See Ohio Adm. Code § 4112-3-10(B)(3).

**8.**   This Conciliation Agreement and Consent Order does not constitute an admission by Respondent of any violation of Ohio Revised Code Chapter 4112.

**9.**   The Commission may investigate whether Respondent has complied (or is complying) with the terms of this Conciliation Agreement and Consent Order. To that end, the Commission may require written reports and/or conduct inspections, examine witnesses, and review and copy pertinent records to determine compliance with the terms contained herein.

**10.**   Respondent agrees that upon its failure to fully comply with the provisions of this Conciliation Agreement and Consent Order the Commission may initiate further action including, but not limited to, the filing of a complaint in the Court of Common Pleas to seek enforcement of the terms and provisions of this Conciliation Agreement and Consent Order and reimbursement for any legal fees and costs incurred in filing such enforcement action.



*SIGNATURES TO FOLLOW ON THE NEXT PAGE*

**CHARGING PARTY (Hailey Meronk or Representative)**

_____

Signature                                    Printed Name                              Date


_____

Title

**RESPONDENT (Upper Sandusky, LLC dba Gypsy Lane Estates fka Gypsy Lane Estates, Inc; Greenbriar, Inc.; Robert Maurer, Owner)**

_____

Signature                                    Printed Name                              Date


_____

Title

**OHIO CIVIL RIGHTS COMMISSION**

_____

Signature                                    Printed Name                              Date


_____

Title